Thank you, Your Honor. May it please the Court, regarding the competency to stand trial issue, as argued in the opening brief, this Court should find that the State Court's factual determinations regarding that issue were unreasonable. The State Court of Appeal found that a second competency hearing was not required, and it also failed to analyze or discuss, in its opinion, in resolving that issue, the substantial testimony from Mr. Gray's trial attorney, Ms. Bouchot, who repeatedly raised this concern in the trial court that Mr. Gray was not competent to stand trial. In fact, the issue was raised early in the case. Mr. Gray was evaluated for competency to stand trial, found competent in, I believe, July of 2011. Then he filed a FORETA motion to represent himself, was examined again, and found incompetent to represent himself at trial. So the trial, after the first competency determination was made, the trial started about a year and a half later. And at that point, Mr. Gray's attorney was still concerned about his competency and raised the issue on January 11 and February 5 and 6. It was discussed extensively on the record. And the State Court of Appeal's decision mentions none of these facts. And it's appellant's argument that this Court should find the State Court of Appeal's decision to be unreasonable for its failure to consider all that substantial and probative evidence concerning Mr. Gray's competency. Counsel, aren't we required to, it would be different if the State Court of Appeal got the facts wrong. But, I mean, said the light was red when the light was green. But in a circumstance where the Court is discussing some facts and isn't discussing at all, you claim they're not to presume that they correctly understood the facts, if there's any ambiguity there, as opposed to presuming they didn't know the facts were there because they didn't mention them? Under AEDPA? I think the short answer, Your Honor, is no. And I would cite Taylor v. Maddox, which was a somewhat similar situation in which the State Court of Appeal just ignored the testimony of the defendant's attorney who submitted a declaration regarding what the defendant had told him after he had spoken with police officers. And the Court in Taylor v. Maddox said it was unreasonable for the State Court simply to ignore probative evidence on an important issue like that. So, yes, State Courts are presumptively entitled to deference when Federal Courts are reviewing their decisions. But if the Court determines that it is unreasonable, then no deference is required. Although, I mean, the PCR Court on several occasions is talking about what defense counsel stated. Your contention is that by not discussing other things that defense counsel stated that we have to find the Court was unreasonable because we have to presume that by not talking about it, they didn't know it was there or they decided it was irrelevant simply because they mentioned some statements and not others. I wouldn't go that far, Your Honor. I would say that when reviewing all the evidence, the testimony of Ms. Bustro, the repeated, well, not testimony, but her repeated comments and objections concerning Mr. Gray's competency are just too compelling to ignore. Under a Supreme Court precedent cited in the appellant's opening brief, trial courts are required to consider input from the defendant's attorney on the competency issue. That was discussed in Drope and Pate. And Ms. Bustro, to her credit, did an outstanding job of repeatedly raising this issue. And she told the Court, I don't think that Mr. Gray is understanding the proceedings. I don't think he can assist me. I think he needs to be evaluated again. And the trial court acknowledged all that and said, based on my dealings with the defendant and the two evaluations, the Feretta one you mentioned, incompetent to represent himself, but that person said he was still competent to go to trial. And, you know, our case law refers to the trial judge a lot of authority on making this call, doesn't it? It does, Your Honor. But again, I think that that determination was objectively unreasonable in light of not only trial counsel's comments, but Mr. Gray went into the trial having been found not competent to represent himself. And Dr. Mattiuzzi explained in his report that Mr. Gray suffered from a severe mental disorder. So he went on trial. The trial court said it was a close call, right? Yes, it did. So the trial court was clearly considering the evidence that you're talking about, but the trial court made a call in what the trial court described as a close case. It did. But I think that call was unreasonable given the very unusual circumstances in this case where a defendant's competency arises at the very beginning of the case. And then it arises again when the defendant wants to represent himself. So he's evaluated by several times by different evaluators, all of whom agree that he has some serious mental deficiencies. And then on the eve of trial, trial counsel telling the judge that her client cannot assist in his defense. He's not understanding the proceedings. This is in light of the prior evaluations establishing that he has some mental challenges, some mental deficiencies. And instead of deferring to counsel's concern that he not be tried while incompetent, he denied the request for a second competency evaluation, which I think is unreasonable. Appellant asserts that it's unreasonable. But there's a difference between saying, hey, something new has happened. He fell in the jail, hit his head, and now he's showing different symptoms. This was not a change in circumstance. This was just the trial counsel was saying it all along and continued to say it. And the trial judge said, yeah, this is a tough call. I can tell you, sitting in that seat where the trial judge was, sometimes it is a tough call and you have to make your judgment based on everything that you've seen, all the evaluations. It isn't like trial counsel said, we had our client evaluated by a neuropsychiatrist who says he is completely beyond the pale and has no ability to process what's going on. Or there's been a change of circumstance. What you have here is a trial judge dealing over a fairly long period of time with an individual, knowing that he had a suicide attempt, it wasn't the first, but in the jail, and still coming to a certain conclusion. Now, you and I may disagree with that conclusion, but I don't see how we could say it was unreasonable under case law. I would go back to the U.S. Supreme Court precedents, Your Honor, stating that input from counsel is important. And what's unknown on this record is how much weight did the trial court give to counsel's repeated concerns about Mr. Gray's competency? He basically just, he didn't say anything about what weight he would give to those concerns. And in light of Mr. Gray's poor functioning and this issue that dragged on from the beginning of the case until trial, I think that the better choice would have been to suspend the proceedings, because there clearly was some doubt about his competency. He was not competent to represent himself, certainly. That had been determined. And then on top of that, his attorney is saying he's not competent to go to trial, he doesn't understand things, I have to explain repeatedly what's going on. And the state trial judge applied only the state law in ruling on that issue. There was, as far as I could tell, there was no consideration of the U.S. Supreme Court precedents that dealt with that particular issue and talked about the importance of getting input from trial counsel. But counsel, our law, the federal law doesn't require state courts to cite federal cases. It requires them to follow the laws laid down by the United States Supreme Court, whether they've cited them or not, right? Correct, Your Honor. So why don't you give me your best argument as to how what the state courts did here was inconsistent with Drope, if I'm pronouncing that right? Well, in Drope, as I recall, the defendant's competency, the defendant shot himself and was absented from the trial, but the facts are somewhat escaping me. But the trial counsel raised the issue of his competency. I believe there was a psychiatric report that had been submitted in request for continuance, and the judge denied the request for continuance, denied the request for a competency hearing. So there was some expert opinion down the record regarding the defendant's competency, and the Supreme Court said it was wrong. The Supreme Court re-weighed that evidence. Right. In both Pate and Drope. But didn't the Supreme Court very clearly show, I mean, very clearly say that there's no formula, there's no cookie-cutter approach, it depends on the It did say that, Your Honor. And so this is a case, I think this case actually is, well, I would say it is nearly as strong as, it's not equally as strong as Drope and Pate. I mean, I'm repeating myself because I keep referring to the long history of Mr. Gray's psychiatric history and his evaluations and the concerns by counsel. So, and what's interesting also is that after trial, he filed another threat of motion, and Dr. Mattiuzzi again found him to be not competent to represent himself. So we know he went through the trial, not competent to represent himself, but also having, I think Dr. Mattiuzzi said he had a schizotypal personality disorder, possibly psychosis. So he had some serious problems going through that trial. And when Pate and Drope reweighed the evidence, they found the correct course was to suspend the proceedings when there's a reasonable doubt. And Mr. Gray's attorney was presenting to the court her opinion that there is a reasonable doubt, and she cited her reasons. So competency should have been determined a second time, I would submit. Moving on to the jury issue, the juror competency issue, I would submit again that the state court of appeals decision was unreasonable in that it recharacterized the transcript of those proceedings between the jury foreperson and the judge. The jury foreperson told the judge that there was a juror who didn't seem to understand the term reasonable and beyond a reasonable doubt. And the prosecutor asked if the juror seems to understand the instructions, and the foreperson said it does not appear she is understanding the instructions. And somehow that got changed into a disagreement about reasonable doubt. So there's nothing in the record that would suggest that this issue concerned a disagreement about reasonable doubt. The prosecutor took the lead on the issue. Well, nothing in the record except the district court, I mean, except the trial judge's appraisal, that what the foreperson was complaining about was, you know, we're 11 to 1 for guilty, and we have a holdout here, and characterizing it as, well, this juror doesn't understand reasonable doubt. And the trial judge saying, well, the fact that somebody may not be agreeing with the other 11 is hardly a reason to dismiss them. You're saying that the record compels the conclusion that the trial judges and the appeal court appraisal of that was wrong? I think it does in light of the prosecutor's comments, Your Honor. He disagreed with the judge stating that he thought the problem was not about any disagreement concerning reasonable doubt. And then he asked, why don't we question the juror and just ask if she understands the instruction? But the trial judge wouldn't do that. There only one question was asked. And then after that, no follow-up was allowed. So this issue never really was resolved. The foreperson had this problem. And the only reasonable interpretation from his words in the juror did not understand the instructions. And if she didn't understand the words in the instructions, then it was difficult to proceed. And the State Court of Appeals' conclusion to the contrary, I would submit, was an unreasonable interpretation of those facts. But wouldn't you agree that if you have a holdout juror, and one side is seeking to throw that juror off the panel or the jury, a trial court must take extreme care before removing the holdout juror? Wouldn't you agree? Yeah, I think generally that's true, Your Honor. If the court had removed the juror, you'd be arguing the court shouldn't have removed the holdout juror, my guess is. Yeah, or even if just the trial judge had brought that juror in and quizzed her, it would have been like a dynamite instruction. You'd go back there and listen to your fellow jurors and do what they're doing. And you would have a very good issue on appeal on that. I don't know that the juror was a holdout. I don't get that interpretation from reading the transcript. To me, it was whether the juror actually understood the words. And the foreperson explained they'd gone over the jury instruction, read it to her, tracked the words with their fingers, and it wasn't any help. But there's no statement on the record that we've all come to a conclusion, but the one juror doesn't agree with us, and we can't move forward on it. That is not in the record. I mean, I know the trial judge made that conclusion, but nothing from the jury foreperson suggested they were hung up on an issue because one juror didn't see things the way everyone else did. Your time has expired, so we'll hear from you. Thank you, Your Honor. Good morning, Your Honors. Deputy Attorney General Max Feinstadt for the Respondent. Your Honors are correct that the Court of Appeal does not need to write out the specific weight it gives every piece of evidence when it determines a case. Regarding the competency issue, the Court had a different argument than what Petitioner is making now in front of it. In state court, Petitioner argued that—he did not argue that there was a substantial change in his circumstances. He did not argue that he was suddenly less able to understand what was going on. Rather, he made an argument of what process he was entitled to. He said, before I was evaluated for a mental disorder, and now there is some evidence that my symptoms are caused by a developmental disability. This entitles me to a different type of evaluation under state law. And the state court said, you have to show a substantial change in your circumstance before we even get there. And now, Petitioner is arguing instead that there was a change in circumstance. And possibly the reason that that argument was not made in state court is because the evidence didn't show it. The evaluations that were done to Petitioner after he was found competent showed that he had a developmental disability, but the evaluator said that his ability level was consistent with what the evaluator who found him competent to stand trial had seen and what the evaluator who had looked at him several years prior had observed. So, given that evidence, given the evidence that there was no change in what Petitioner was understanding between the time he was found competent to stand trial and the time that the second doubt was declared, there was no unreasonable determination of facts. Regarding the juror issue, the trial court was faced with the jury foreperson who said that another juror did not understand the meaning of reasonable doubt. Now, this court, other courts have disagreed over the meaning of reasonable doubt in many opinions, and the Supreme Court has said specifically that reasonable doubt is not a term that should be further defined. So, given that, even though one juror thought another juror didn't understand the term, that is a disagreement over what the term means, and that's not something that the court has ever clearly established a standard for. They have not clearly established that a juror has to have a certain understanding of the term reasonable doubt. Does the panel have any questions? Was it incumbent on the trial judge to at least have some sort of questioning or dialogue with the juror to determine if there was a problem? No, Your Honor. Given that the information that the trial court had before it, it was reasonably able to determine both that the jury was taking part in deliberation and that the trial court was taking part in deliberations, and that the disagreement was over the way that the term reasonable doubt is applied in any case, which is what you would expect a jury to do in any cases, argue over how to apply reasonable doubt to the facts. But the question was really about the juror's inability or supposed inability to understand the instructions, period, not just a disagreement about reasonable doubt. I mean, that's the issue that should prompt an inquiry. Don't you agree? No, Your Honor. I mean, did the trial court say, look, they're just disagreeing about reasonable doubt? The trial court made the finding that they were deliberating and that they were disagreeing over the meaning of the instructions, that before a person— The instructions, right. Right, that the foreperson had a different meaning, a different definition of reasonable doubt than the other juror. I mean, what I took from the transcript was they said, I don't think this juror is understanding anything about the instructions, and that was the complaint, not just that they were disagreeing about what reasonable doubt meant. The juror foreperson said the juror is not comprehending the reasonable doubt instruction and it is holding us up. But again, somebody's understanding of reasonable doubt could differ from somebody else's, and the court's determination that they had different understandings of that instruction was reasonable. And again, I would point, Your Honor, to Supreme Court cases said that— No, I'm not disagreeing with you. I'm just saying I think that was—it struck me that was a concern. The California Court of Appeal basically came down in your direction saying it was just a disagreement about reasonable doubt. But even the prosecutor who was handling the case was worried enough to suggest maybe we have a problem here. But if you had substituted the alternate juror and told them to start deliberations anew, defense would have—or the petitioner would have an issue about, that's not fair, you booted off the holdout. So we're sympathy—we have a certain amount of empathy for your predicament. Beyond that, Your Honor, the Supreme Court has never set a standard for jurors' understanding of the directions. They've never said a juror needs to have a specific understanding of what these terms mean. So there's no— If we're not talking about racial bias, we're basically told by the appellate courts don't penetrate the jury room at all, right, to talk about deliberations. Correct, Your Honor. Well, I mean, but it's not like there's nothing that is a standard. If, for example, someone were totally unable to communicate with other jurors in the English language and there were no issue, obviously, of an interpreter, but if someone couldn't communicate at all in the English language, they couldn't serve as a juror, right? No, Your Honor. I don't think that has been clearly established, that a juror needs to have a certain command of the English language in order to participate. No, but the juror has to be able to participate, and we have all sorts of cases where either it's an emotional reaction or something happens in the jury room where a juror can't participate anymore, and that's a different issue. I mean, I understand your argument. You said that's not this case, but, in fact, that appeared to be the concern of the foreman in this case is that the juror couldn't participate and the trial judge resolved it. You can't just say, I think, that if the juror is unable to participate, they should stay on the jury. I think if the trial judge's assessment and a fair reading of the situation is that the juror foreman was frustrated with the juror because they had very different opinions on the case and different opinions over the definition of reasonable doubt, not that the juror was not engaged in deliberations. Yeah, it's hard to tell from this transcript, actually, but anyway. Anything else you want to chat with us about? No, Your Honor. Okay. Any further questions? No, thank you. Thank you. The case just heard will be submitted for decision, and we'll proceed to the next case on the oral argument calendar, which is Kong v. Fraunheim. I hope I'm pronouncing that correctly, but you will correct me if I'm wrong.
judges: THOMAS, BENNETT, Lasnik